STATE OF NEBRASKA, APPELLEE, V.
HEATHER TORWIRT, APPELLANT.
607 N.W. 2d 541

Filed March 14, 2000.   No. A-99-507.

James R. Mowbray and Kelly S. Breen, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS and INBODY, Judges, and HOWARD, District Judge, Retired.

HOWARD, District Judge, Retired.
### INTRODUCTION
After a trial on stipulated facts, Heather Torwirt was found guilty on January 28, 1999, of first degree sexual assault on a

child under Neb. Rev. Stat. § 28-319 (Reissue 1995). On April 6, 1999, she was sentenced to probation for a period of 3 years and was ordered to serve a period of 90 days, minus time served, in the Lancaster County Corrections facility. Furthermore, pursuant to Nebraska's Sex Offender Registration Act, Neb. Rev. Stat. § 29-4001 et seq. (Cum. Supp. 1998), Torwirt was ordered to register within 5 days of her release with the sheriff of the county in which she resides. Torwirt appeals.

## BACKGROUND

Torwirt and the State submitted her case to the court based upon the following stipulated facts: The mother of P.N., date of birth October 14, 1993, and Torwirt were friends and would often babysit one another's children. There were occasions when P.N. would spend the night at Torwirt's residence.

On March 16, 1997, Det. Sgt. Gregory Sorensen of the Lincoln Police Department was investigating an alleged sexual assault of another child, M.P., who is not the victim in this case. During the late afternoon or early evening, Detective Sorensen contacted Me.P. regarding a telephone conversation that Me.P. had had with Torwirt relating to the alleged sexual assault. Me.P. was concerned that her child could have been a victim of a sexual assault and agreed to assist Detective Sorensen. Me.P. agreed to call Torwirt, who was at that time at a motel in Illinois.

On March 16, 1997, Me.P. called Torwirt at the motel where she was staying, and the conversation was taped by Detective Sorensen through a device installed by him. Detective Sorensen was not present during the telephone call. During that conversation, the following exchange took place between Me.P. and Torwirt:

Q: Huh, so it was just, uhm, [P.N. and another child he sexually assaulted]?

A: And then [with yet another child] he, when she was sleeping, uhm, he just pulled her panties aside a little bit and touched her clitoris and that was, and then that was is [sic]. But see, those, those he told me about and I saw him do it with [P.N.], I was in the room. And I think he thought it was going to turn me on and it made [sic] really uncomfortable and I did say we have to stop this, we can't do this.

Q: Who did you touch?

A: I touched [P.N.] cause he asked, he says will you touch is [sic] and I started to but I couldn't finish through, finish it. I didn't, it was like I didn't even find, you know, I touched the outside of her.

Q: Uh huh (Yes).

A: And I, and it was, it was just like well, it didn't even do anything for me and so I just said, we can't do this. And so we stopped and I picked her up and I put her on her bed and she was still asleep.

Detective Sorensen returned later that evening to retrieve the tape of the conversation from Me.P. He listened to the tape of the conversation and then took the tape to the Lincoln police station and logged it into property.

Detective Sorensen then made a telephone call to Torwirt, whom he considered to be a suspect in the sexual assault investigation. During the telephone call, Detective Sorensen discussed the sexual assault investigation with Torwirt. This conversation was also taped by Detective Sorensen. He identified himself as a police officer at the beginning of their conversation. A partial transcript of that conversation was entered into evidence. Torwirt stated that she sometimes babysat 3-year-old P.N. She then began to describe an incident which occurred between April and October 1996 or possibly between July and October 1996 involving herself, her husband, and P.N. when P.N. was spending the night.

A: And uhm, I walked into the bedroom one night after she was asleep and he was touching her vagina again and he asked me to touch her vagina and I did reach over to touch her and I touch the surface of her vagina.

Q: Uh huh (Yes).

A: And I said we can't do this and he stopped and I, uhm, I then picked her up and put her down onto the little bed I had made on the floor.

Q: Okay, was she sleeping at the time too?

A: Yes.

Later in the conversation, the following exchange took place:

Q: Okay. So, was she, was the little girl spending the night with you that night?

A: Yeah, yeah. I babysit her uhm, frequently I'll watch her overnight uhm, for even on the weekends or something and then she watches my son. We uhm, trade babysitting cause I have a four year old son.

Q: Okay. So she was watching[.]

A: I was babysitting.

Q: Okay and that was at his address or at the address you were living at then on Prescott sometime...

A: Yes.

Q: Between July and October.

A: Right.

Q: And if I understand this right he had gone into the bedroom.

A: Uh huh (Yes).

Q: Where she was sleeping and he was touching her vagina when you walked in and saw this.

A: Right.

Q: And then he wanted you to touch it also so, you did and then you said no, we can't do this and stopped it.

A: Right.

Q: Okay, did he ever do anything else with her?

A: No.

During their conversation, Detective Sorensen also became aware that Torwirt was attending an outpatient treatment center in Illinois.

Officer Kerry Crosby, also with the Lincoln Police Department, was involved in the investigation of the same sexual assault on a child case. Shortly after Detective Sorensen's conversation with Torwirt on March 16, 1997, Officer Crosby called and spoke with one of Torwirt's counselors in Illinois. The counselor advised him that an interview would not interfere with Torwirt's treatment. Officer Crosby then contacted Torwirt. Torwirt agreed to speak with him if he traveled to Illinois to interview her.

Officer Crosby traveled to Illinois to interview Torwirt. He arrived at the motel where Torwirt was staying on March 19, 1997, and he interviewed her that evening. Torwirt agreed to go to Officer Crosby's room at the same motel in which she was staying for the interview; the two had an unrecorded conversa-

tion for approximately 10 to 15 minutes, followed by a 2-hour tape-recorded interview.

A: He asked me to touch her.

Q: And you did?

A: Yes.

Q: Describe how you touched her?

A: I put my mouth down to her and uhm, I put my tongue out and I did touch her but I didn't, I couldn't do anymore. I mean I didn't, I don't know what I touched but I did put my tongue out but I didn't, I don't know what I touched. I know it was there in the genital area but I didn't and I couldn't do it and I stopped and I said we can't do this.

Q: He's licking her in the genitals. What are you doing?

A: I'm sitting there.

Q: You're watching it?

A: Yes.

Q: When he got done licking her genitals, he told you to?

A: He didn't tell me.

Q: Well what did he do?

A: He said do, do you want to or try or something like that. I don't know.

Q: But you're not sure what he said?

A: No.

Q: So let me understand this you was . . . was [P.N.] on her back?

A: Yes.

Q: Now did you crawl up between [P.N.]'s leg or did you bend over her?

A: I bent over her. He was bent over her too because, you know, she's little.

Q: Did he touch her with his hands too?

A: No.

Q: Did you touch her with your hands?

A: No.

Q: So somewhere in between her legs your tongue touched her skin?

A: Yes.

Q: For how long?

A: Two or three seconds may be.

Q: And you decide what?

A: I didn't like it.

Q: Why did you feel compelled to do this?

A: I don't know.

Q: What happened after that?

A: I said we have to stop she might wake up and this isn't right. And he said, yeah you're right. And uhm, so I picked her up and uhm, I had a little uhm, bed that I had made on the floor because I didn't want her to be afraid if she woke up during the night so I put her on the bed on the floor and covered her up.

Later the same evening, Torwirt returned to Crosby's motel room to make a recorded telephone call to her husband. Although a transcript of that conversation was entered into evidence, the parties stipulated that statements therein made by Torwirt's husband were inadmissible hearsay and could not be considered to prove the truth of the matters asserted. While that conversation contains what might be an admission of remorse by Torwirt's involving P.N., it nonetheless suffers from the same deficiency as the confession. Thus, the transcript does not carry the State's burden of proof either. Other than the above excerpts from the recorded conversations on March 16 and 19, 1997, and the stipulation, the State offered no other evidence.

Within the stipulation, Torwirt reserved her objections to the admissibility of her statements and renewed her motion to suppress those statements. The parties further stipulated that Torwirt did not waive the constitutional grounds for her objections by entering into the stipulation.

Torwirt waived her right to be present in the courtroom when the verdict was rendered. The matter was taken under advisement. On January 28, 1999, the district court filed a written order finding Torwirt guilty of first degree sexual assault on a child. Following a presentence investigation, Torwirt was sentenced on April 6 to 3 years' probation, which included 90 days in the Lancaster County Corrections facility.

## ASSIGNMENTS OF ERROR

Torwirt alleges that the district court erred in failing to suppress statements made and erred in finding her guilty without any evidence to corroborate her statements.

## STANDARD OF REVIEW

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

## DISCUSSION

To sustain a conviction for a crime, the corpus delicti must be proved beyond a reasonable doubt. *Reyes v. State*, 151 Neb. 636, 38 N.W.2d 539 (1949).

The corpus delicti is the body or substance of a crime, the fact that a crime has been committed without regard to the identity of the person committing it. *Reyes, supra.*

The corpus delicti may be proved by circumstantial evidence. *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980). Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists. *State v. Blackman*, 254 Neb. 941, 580 N.W.2d 546 (1998).

Extrajudicial admissions or a voluntary confession is insufficient to prove that a crime has been committed, but either or both are competent evidence of the fact and may, with corroborative evidence of facts and circumstances, establish the corpus delicti and guilty participation of the defendant. *Hoffman v. State*, 160 Neb. 375, 70 N.W.2d 314 (1955). See *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978). In *Scott*, the court stated that the corroboration need only be slight.

The State concedes that a confession alone is insufficient to sustain a conviction without corroborating circumstances. However, the State argues that first degree sexual assault quali-

fies as a physical injury crime, and that the prosecution need only prove that the injury occurred and that someone was criminally responsible for it in order to establish corpus delicti. According to the State, it proved that the actual assault occurred because the police investigated sexual assaults relating to another child, M.P.

■ It is true that where a crime involves physical damage to a person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur and that some person was criminally culpable. *Scott, supra.* In such a case, there need be no link, outside the confession, between the injury and the accused who admits having inflicted it. *Id.*

■ However, in this case, the only evidence showing that a sexual assault occurred are the statements made by Torwirt. The fact that the police had investigated a possible sexual assault relating to another child is wholly irrelevant to establishing that P.N. was sexually assaulted. When the only evidence of a sexual assault is the defendant's own statements, the evidence is insufficient to sustain a conviction for sexual assault. Nothing outside of the statements made by Torwirt suggests that a sexual assault occurred. As a result, the evidence presented was insufficient to sustain Torwirt's conviction for first degree sexual assault on a child.

As this court has determined that the State has failed to present sufficient evidence to sustain Torwirt's conviction even assuming the statements made by Torwirt were properly admitted, it is unnecessary for us to address whether the court's decision to permit those statements into evidence was proper. *Kelly v. Kelly,* 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

## CONCLUSION

Because the only evidence that a crime was committed was the statements made by Torwirt, we conclude, as a matter of law, that the evidence is insufficient to sustain her conviction for first degree sexual assault on a child. The judgment of conviction

the sentence are therefore reversed, and the cause is remanded with direction to dismiss.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.