IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. REINIG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BARBARA REINIG, APPELLANT.

Filed March 28, 2017.    No. A-16-808.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Barbara Reinig was convicted of acquiring a controlled substance by fraud. She appeals her conviction and sentence, asserting that there was insufficient evidence to support a conviction and that the trial court committed plain error in its instruction of the jury. For the reasons that follow, we affirm.

## BACKGROUND

On November 5, 2015, Reinig attempted to fill a prescription for Oxycodone at a Walgreens location in Bellevue, Nebraska. Oxycodone is an opiate pain medicine classified as a Schedule II narcotic. It is dispensed only with a written prescription from a physician and it cannot be refilled. The pharmacist, Kelly Vana, noted what appeared to be "discrepancies" on the prescription. Vana observed that the date on the prescription had been "crossed off or altered" and the writing which said "may refill early" did not match the doctor's handwriting.

- 1 -

Vana called the prescribing doctor, Dr. Tiffany Fonte-Ordonez to clarify the date on the prescription. Fonte-Ordonez's office faxed a copy of the original written prescription. After the call, the pharmacist alerted the Bellevue Police Department. The police responded and Vana directed them to Reinig, who was waiting inside of the pharmacy. Vana made a copy of both prescriptions and provided them to the police officers as part of their investigation.

Reinig was charged by information with acquiring a controlled substance by fraud, a Class IV felony. Trial took place on May 24, 2016. Vana identified Reinig in the courtroom as the individual who handed her the prescription, received as Exhibit 1, on November 5, 2015. Vana testified that the copy of the original prescription she received via fax from the prescribing doctor in Lakewood, Colorado, did not have the alteration that the tendered prescription did.

Officer Beau Chase was a new police officer who was in the "field training program" and was partnered with a more experienced law enforcement officer, Officer Brian Mercer. Chase testified that upon meeting Reinig, he stated who he was, that he worked for the police department and started to ask questions regarding the prescription. Chase said Mercer quickly stopped him and reminded him to read Reinig her *Miranda* rights before asking any further questions.

After reading Reinig her rights, Chase asked the same questions of Reinig, including what she was doing in Nebraska and what she was doing at Walgreens. Reinig told Chase that she was filling a prescription, and had tried to fill the prescription in Colorado, but the pharmacist had refused to fill it. She said the pharmacist in Colorado changed the month and date of the prescription and wrote "may refill early" on the document. Chase said Reinig eventually admitted that she was the person who had changed the prescription and she had done it to be able to refill her prescription faster than it was supposed to be filled. Chase said she admitted that she had a substance abuse problem. Chase testified that his report did not include Reinig's admission.

Officer Brian Mercer testified that he and Chase were provided with a prescription that had been altered, which he identified as Exhibit 1. Mercer said Chase initiated contact with Reinig, who asked questions about "what was going on." Mercer wanted to make sure that "any and all statements" that were made were made after she was aware of her rights. Mercer testified that no questions were answered or incriminating statements made by Reinig before she was advised of her rights. Mercer identified Reinig in the courtroom.

Mercer said that initially, Reinig stated that she knew the prescription had been altered, and the alteration was done by a pharmacist at a Rite Aid in Lakewood, Colorado, when she went there to get it filled. She said she was advised that Rite Aid could not fill it, but the pharmacist changed the date on the prescription and wrote that it "may be refilled early." Reinig told the officers that she had been taking Oxycodone for approximately three to four months, and that she takes more than the prescribed dose, so she needed to get the prescription refilled early. Mercer testified that "Eventually, after speaking with her about how it was changed, she admitted to changing the prescription herself," and told the officers that she had a "drug problem."

At the close of the State's evidence, Reinig's counsel made a motion for a mistrial and a motion to dismiss, which were both overruled. The defense did not call any witnesses. The jury found Reinig guilty of acquiring a controlled substance by fraud on May 24, 2016.

Reinig filed a motion for new trial on June 6, 2016. A hearing was held on the motion on June 13 and 20, and it was overruled on June 28. On August 15, 2016, Reinig was sentenced to a

term of 30 months' probation under the Specialized Substance Abuse Supervision program (SSAS).

## ASSIGNMENTS OF ERROR

Reinig asserts the trial court erred in overruling her motion to dismiss and the jury erred in finding there was sufficient evidence to convict her of the charged crime. She also asserts the trial court committed plain error by not giving an instruction defining "criminal attempt."

## STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same; an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, as such matters are for the finder of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016).

Whether jury instruction given by a trial court are correct is a question of law; when dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Martinez*, 295 Neb. 1, 886 N.W.2d 256 (2016).

## ANALYSIS

*Sufficiency of Evidence.*

On appeal, Reinig asserts the trial court erred in overruling her motion to dismiss and the jury erred in finding there was sufficient evidence to convict her of the charged crime. The defense presented no evidence, thus, both of these assignments of error relate to the sufficiency of the State's evidence. Therefore we will consider these arguments together.

At the close of the State's case, Reinig made a "motion to dismiss," arguing there was "absolutely no evidence tying Exhibit 1 to [her]." Reinig's motion was, in essence, a motion for directed verdict. The defense argued that the Exhibit should have been excluded by the hearsay rules. The court reasoned that Reinig's confession was properly corroborated because she made statements to the officers regarding her alteration of Exhibit 1, and that Exhibit 1 was provided as independent physical evidence that Reinig had attempted to fill a prescription that had been altered. The court determined that, although the document had words written on it, it was essentially the "tool" with which the alleged crime was attempted. Reinig's motion was overruled.

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking in probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

The offense of acquiring a controlled substance by fraud is set out in Neb. Rev. Stat. § 28-418(1)(c)(Cum. Supp. 2014) which provides:

(1) It shall be unlawful for any person knowingly or intentionally:
(c) To acquire or obtain or attempt to acquire or obtain possession of a controlled substance by theft, misrepresentation, fraud, forgery, deception, or subterfuge.

Here, the State adduced evidence in support of the claim that Reinig was arrested for knowingly or intentionally attempting to acquire or obtain possession of a controlled substance, Oxycodone, through the use of an altered prescription. The record shows that, Reinig made statements to the police officers that she altered the prescription.

Extrajudicial admissions or a voluntary confession is insufficient to prove that a crime has been committed, but either or both are competent evidence of the fact and may, with corroborative evidence of facts and circumstances, establish the corpus delicti and guilty participation of the defendant. *Id.*

On appeal, Reinig asserts the trial court erred by not directing a verdict in her favor, arguing that her "statements alone were not enough evidence to withstand the defense motion to dismiss made at the end of the State's case in chief." However, the record shows that the State's case was not built upon Reinig's statements alone.

The corpus delicti is the body or substance of a crime, the fact that a crime has been committed without regard to the identity of the person committing it. *State v. Torwirt*, 9 Neb. App. 52, 607 N.W.2d 541 (2000). The corpus delicti may be proved by circumstantial evidence. *Id,* citing *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980). Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to the logical inference that such fact exists. *State v. Torwirt, supra.*

Exhibit 1 shows that someone altered the prescription by striking through or marking over the date and writing "May refill early" toward the bottom of the prescription. Reinig admitted that the document had been altered, stating, at first, that it was altered by a Colorado pharmacist, and then stating that she had done it herself. Vana testified that she noted discrepancies in the prescription and she identified Reinig as the individual who presented the altered prescription to the pharmacy on November 5, 2015. In addition, Vana testified that she spoke to the prescribing doctor's office and reviewed a copy of the original prescription, noting that the original did not contain the alterations. While she did not testify regarding the content of her communication with the prescribing doctor's office, she immediately "alerted the Bellevue Police that the prescription had been altered."

Officers Mercer and Chase testified that Reinig acknowledged that the prescription was altered, but she initially claimed that the alteration was done by a pharmacist in Colorado. They both testified that she had been advised of her rights and that she had admitted to personally altering the prescription. The record clearly shows that Exhibit 1 corroborates the confession made to Officers Chase and Mercer, and indicates that a crime had been committed.

Reinig argues the crime of acquiring a controlled substance by fraud involves an element of intent which includes proof of her state of mind. She argues the State failed to meet its burden to provide evidence of her state of mind and the intent to defraud. Mercer testified that Reinig stated that she took more than the prescribed dose of the Oxycodone and needed to refill her prescription sooner than was allowed. This evidence shows that, not only did she have and

attempted to fill a prescription for Oxycodone, she also intended to fill it early because she was taking more than the prescribed dose. To be able to fill the prescription early, an alteration of the original prescription was necessary.

Reinig argues there was "no evidence offered, outside the Appellant's statements, to verify that the script was forged." She argues that the pharmacist and the police officers did not have any "first-hand knowledge or whether [the prescription] was actually altered or that the appellant demonstrated an intent to defraud outside her statement." She argues that the prescribing doctor did not testify and Vana's statements regarding the alteration of the prescription were "mere speculation." Although Vana testified that she had no "first-hand" knowledge Reinig altered the prescription, she testified that she was able to view a copy of the original prescription which had no alterations. While the State could have called a handwriting expert or the prescribing doctor to testify, this was not a requirement, and the State offered sufficient evidence, through Exhibit 1 and the witness testimony that a reasonable fact finder could determine the document had been, in fact, altered.

Upon this record, we cannot conclude that the district court erred in overruling Reinig's motion to dismiss because sufficient evidence was presented which prevented the case from being decided as a matter of law.

The jury made the factual determination that the evidence was sufficient to show that Reinig violated § 28-418(1)(c). An appellate court does not resolve conflicts in the evidence, pass upon the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State is sufficient to support the conviction. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). Viewing the evidence in the light most favorable to the prosecution, we conclude that there was evidence presented from which a rational jury could find beyond a reasonable doubt that Reining was guilty of the charged crime.

*Jury Instructions.*

Reinig asserts that the district court failed to properly instruct the jury because it did not provide an instruction "defining the legal concept of an attempted crime." She argues that this term is not commonly used and generally understood, which is why it is defined in the Nebraska Jury Instructions.

Reinig did not object to the proposed jury instructions or offer an instruction defining the word "attempt." The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Brooks*, 23 Neb. App. 560, 873 N.W.2d 460 (2016). Nevertheless, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *Id.*

Jury instruction number 3 states:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of acquiring a controlled substance by fraud are:

1. The defendant, Barbara R. Reinig, knowingly or intentionally attempted to acquire or obtain possession of Oxycodone, by misrepresentation, fraud, forgery, deception or subterfuge;
2. The act occurred on or about November 5, 2015; and
3. The act occurred in Sarpy County, Nebraska.

The burden of proof is always upon the State to prove beyond a reasonable doubt all of the material elements of a crime charged and this burden never shifts.

Reinig argues Instruction 3 "made it clear to the jury that they could find Appellant guilty even if she never obtained or acquired a controlled substance," and implies that this was wrongful. As previously discussed, § 28-418 states that it is unlawful for a person to knowingly or intentionally "acquire or obtain or *attempt to acquire or obtain* possession of a controlled substance by theft, misrepresentation, fraud, forgery, deception, or subterfuge." (Emphasis supplied.) Jury instruction 3 correctly states the law, is not misleading, and adequately covers the issues raised by the evidence.

Reinig also argues that the trial court could have, or should have used NJI2d Crim. 3.3 which defines the crime of attempt. She argues that "the elements of an attempted crime are not a matter of common understanding," which is why the terms is defined in NJI2d Crim. 3.3.

Generally, "attempt" is defined as the act or an instance of making an effort to accomplish something. Blacks Law Dictionary 152, (10th ed. 2014). In criminal law, "attempt" is an inchoate offense distinct from the intended crime and it is defined as an overt act that is done with the intent to commit a crime, but falls short of completing the crime. *Id.*

Unlike a defendant who is charged with "criminal attempt" of a crime under § 28-201, Reinig was not charged with a separate crime of "attempt." A person who actually acquires *or* attempts to acquire a controlled substance is guilty of the same crime and is subject to the same penalty under Section 28-418(1)(c). The use of the word "attempt" in the statute is clearly used in the general sense, to include circumstances in which a defendant acquires or makes an effort to acquire a controlled substance by the means defined in the statute. Thus, instruction 3 is a correct instruction of the law. We find the trial court did not commit plain error in not offering a separate instruction defining "attempt."

## CONCLUSION

We find the trial court did not err in overruling Reinig's motion to dismiss, and there was sufficient evidence to support the jury verdict. We find no plain error in the trial court's instructions to the jury.

AFFIRMED.