Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/22/2020 09:07 AM CDT

**State of Nebraska, appellee, v.
Jesse D. Barber, appellant.**

___ N.W.2d ___

Filed September 8, 2020.    No. A-18-1097.

1. **Motions for New Trial: Appeal and Error.** The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.

2. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

3. **Jury Instructions: Appeal and Error.** Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

4. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

5. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

6. **Criminal Law: Words and Phrases.** The corpus delicti of a crime is the body or substance of a crime—the fact that a crime has been committed.

7. **Criminal Law.** The corpus delicti may be proved by circumstantial evidence.

8. ____. Extrajudicial admissions or a voluntary confession is insufficient to prove that a crime has been committed, but either or both are competent evidence of the fact and may, with corroborative evidence of facts and circumstances, establish the corpus delicti and guilty participation of the defendant.

9. **Criminal Law: Proof: Confessions.** The rule that the corpus delicti cannot be proved by the extrajudicial admission of the defendant is true as a general proposition, yet confessions or admissions may be considered in connection with the other evidence to establish the corpus delicti. It is not necessary to prove the corpus delicti by evidence entirely independent and exclusive of the confession or admissions.

10. ____: ____: ____. While a voluntary admission tending to prove a crime is insufficient standing alone to prove the corpus delicti, it is competent evidence, and may with slight corroborating circumstances be sufficient to warrant a conviction.

11. **Pleadings: Evidence: Waiver: Words and Phrases.** A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true.

12. **Pleadings: Waiver.** A judicial admission waives all right to deny the fact admitted.

13. **Circumstantial Evidence: Words and Phrases.** Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists.

14. **Sexual Assault.** Under the statutory provision governing the commission of first degree sexual assault when an alleged attacker knew or should have known the alleged victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, analysis in determining if such provision was violated requires the existence of a significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim, and knowledge of the abnormality on the part of the alleged attacker.

15. **Jury Instructions: Appeal and Error.** The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.

16. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the

record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

17. **Sexual Assault.** A victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct.

18. **Jury Instructions: Appeal and Error.** Alleged errors in a jury instruction are examined using a two-step process. First, the court reviews the case based on the errors assigned and argued, or it may find plain error. Second, when an error is identified, the court considers whether the error was harmless or prejudicial.

19. ____: ____. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

20. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

21. **Jury Instructions: Evidence: Appeal and Error.** When examining for harmless error, the court may look at a variety of factors including the jury instructions as a whole, the evidence presented at trial, and the closing arguments.

22. ____: ____: ____. The court may consider the facts of the case when determining whether a jury instruction was confusing or misleading.

23. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

24. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

25. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

26. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** In order to avoid a procedural bar to a future postconviction proceeding, a claim of ineffective assistance of counsel must be presented with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record

and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

27. **Effectiveness of Counsel: Appeal and Error.** The trial record reviewed on appeal is devoted to issues of guilt or innocence and does not usually address issues of counsel's performance.

Appeal from the District Court for Dawes County: Travis P. O'Gorman, Judge. Affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Pirtle, Riedmann, and Welch, Judges.

Pirtle, Judge.

## INTRODUCTION

Jesse D. Barber was found guilty of first degree sexual assault following a jury trial in Dawes County, Nebraska, on September 6 and 7, 2018. In this direct appeal, we affirm the judgment of the district court as to errors raised. With the exception of the ineffective assistance claim relating to the jury instructions, we cannot reach the ineffective assistance of counsel claims for the reason that the trial record is insufficient.

## BACKGROUND

The charges against Barber arose out of a sexual assault of A.N. in Barber's home. In 2017, Barber was charged as follows:

On or about June 29, 2013, . . . Barber, the Defendant, then and there being, in Dawes County, Nebraska, did subject another person to sexual penetration without consent of the victim, or knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of her conduct, in violation of Section 28-319, a Class II Felony.

Barber was acquainted with A.N. because he had been dating her mother since May 2013. Barber lived in a house by himself in Chadron, Nebraska. A.N. lived in Chadron with her father. A.N.'s mother lived near Omaha, Nebraska. At the time of the incident, A.N. was 17 years old and had just finished her junior year of high school. Barber was 27 years old and employed by his family's landscaping and floral business.

On the evening of June 28, 2013, A.N. was drinking vodka and wine coolers at a party at a friend's house. A.N. ultimately vomited in the bathroom, and at that point, she decided she wanted to leave the party and go to sleep. A.N. was afraid to go home to her father's house because she knew he would be angry and disappointed about her behavior. A.N. was not as worried about her mother's reaction, so she called her mother for ideas about what to do. A.N.'s mother suggested that A.N. go to Barber's house, so A.N. set off on foot. In the meantime, A.N.'s mother called Barber to let him know A.N. was on her way and that it was all right with her that A.N. sleep at his house.

While A.N. was walking to Barber's house, she came to the attention of a neighbor who noticed her struggling to walk down the street. The neighbor observed A.N. losing her balance and walking out of her sandals, so he left his porch and approached her to ask if she needed help. The neighbor believed A.N. to be under the influence of alcohol, so he walked with her because he was afraid that if she fell down, she might pass out on the sidewalk. While they were walking, the neighbor overheard A.N. call Barber a total of four times to get directions to his house. During the fourth call, Barber's house was visible and the neighbor observed the front door open and a man standing against the doorjamb. As he watched A.N. approach Barber's house, he decided this situation had the potential to go very badly, so he decided to notify law enforcement about the situation and suggest they perform a welfare check.

Officer Aron Chrisman responded and was dispatched to Barber's house in response to a call about a highly intoxicated

female. Barber answered the door and acknowledged that his girlfriend's daughter was inside and that she was drunk. Chrisman found A.N. lying on the bed in the bedroom, awake and fully clothed, and determined she was intoxicated, due to her slurred speech. Chrisman was the school resource officer at A.N.'s school, so he was familiar with her as a high school student. Chrisman learned from A.N. that she had her mother's permission to sleep at Barber's house, so he told her to stay put and he left after 2 or 3 minutes. Chrisman did not follow up with either of A.N.'s parents nor did he investigate the party.

A.N. went to sleep and has no memory of the overnight hours. When A.N. woke up in the morning, she was fully clothed and all her clothes were in the proper places. By this time, Barber was in the kitchen "on the phone" with A.N.'s mother, cooking breakfast and doing laundry. A.N. noticed blood on the bedding, and when she asked Barber about it, he said, "'Don't you remember last night? Last night was crazy.'" Barber then told A.N. he had performed oral sex on her. A.N. did not believe Barber's account until Barber showed her naked pictures of herself which he had stored on his cell phone. A.N. asked Barber to delete the pictures, and he complied. After they ate breakfast together, Barber drove A.N. back to her car that had been parked near the site of the party.

Barber's version of the facts differs only in that he claims A.N. initiated oral sexual contact after several hours of sleep, so he reciprocated. Barber also testified that they then proceeded to have "sex in a missionary style." Barber denied that A.N. ever told him to stop and stated that because she initiated the encounter, he believed she had the capacity to consent to the sexual activity.

At the end of the State's evidence and again at the close of Barber's case, Barber moved for a directed verdict on the theory that there was no evidence that A.N. lacked the ability to consent at the time of the act nor was there proof of penetration without consent. The court concluded whether or not

A.N. had the capacity to consent was a jury question, because there was ample evidence she was very intoxicated and sufficient evidence of penetration.

The jury returned a guilty verdict, and Barber immediately filed a motion for a new trial that was considered and denied at the sentencing hearing. Barber was sentenced to a term of incarceration of 10 to 12 years in the custody of the Nebraska Department of Correctional Services. This direct appeal followed, filed by different counsel than the counsel representing Barber at trial.

## ASSIGNMENTS OF ERROR

Barber raises three distinct errors. First, the district court erred in denying his motion for new trial, because the only evidence of penetration was Barber's admission, which is insufficient and uncorroborated. Second, the district court erred in instructing the jury as to "without consent" and failing to instruct the jury that the burden of proof never shifts to Barber. And third, Barber received ineffective assistance of counsel before trial and during trial.

## STANDARD OF REVIEW

[1] The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[2] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

[3] Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Id.*

[4] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id.*

[5] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra.*

## ANALYSIS

### DENIAL OF MOTION FOR NEW TRIAL

[6-8] Barber argues the district court erred in denying his motion for new trial, because the evidence was insufficient to support his conviction. Barber argues the State failed to prove the corpus delicti of first degree sexual assault. The corpus delicti of a crime is the body or substance of a crime—the fact that a crime has been committed. See *State v. Torwirt*, 9 Neb. App. 52, 607 N.W.2d 541 (2000). The corpus delicti may be proved by circumstantial evidence. *Id.* Extrajudicial admissions or a voluntary confession is insufficient to prove that a crime has been committed, but either or both are competent evidence of the fact and may, with corroborative evidence of facts and circumstances, establish the corpus delicti and guilty participation of the defendant. *Hoffman v. State*, 160 Neb. 375, 70 N.W.2d 314 (1955). See, also, *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978).

[9,10] Other than his own admission to A.N. in his kitchen, Barber argues there was no evidence establishing that

penetration occurred. Consequently, Barber claims his extra-judicial statements cannot be sufficient to establish the corpus delicti and his guilty participation. The rule that the corpus delicti cannot be proved by the extrajudicial admission of the defendant is true as a general proposition, yet confessions or admissions may be considered in connection with the other evidence to establish the corpus delicti. It is not necessary to prove the corpus delicti by evidence entirely independent and exclusive of the confession or admissions. See *Limmerick v. State*, 120 Neb. 558, 234 N.W. 98 (1931). See, also, *Egbert v. State*, 113 Neb. 790, 205 N.W. 252 (1925) (while voluntary admission tending to prove crime is insufficient standing alone to prove corpus delicti, it is competent evidence, and may with slight corroborating circumstances be sufficient to warrant conviction).

[11,12] Barber's argument that the corpus delicti was not proved is limited to his assertion that the evidence was insufficient to prove penetration. He claims that his extrajudicial admission was not corroborated and is therefore insufficient to establish the corpus delicti. However, Barber testified at trial that he penetrated A.N. This goes beyond an extrajudicial statement and constitutes a judicial admission. "[A] judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true." *Anderson v. Cumpston*, 258 Neb. 891, 897-98, 606 N.W.2d 817, 823 (2000). Accord *State v. Canady*, 263 Neb. 552, 641 N.W.2d 43 (2002). It waives all right to deny the fact admitted. *Kipf v. Bitner*, 150 Neb. 155, 33 N.W.2d 518 (1948). Therefore, Barber's in-court testimony that he penetrated A.N. is conclusive as to that fact.

[13] Aside from the judicial admission, the circumstantial evidence further corroborated Barber's extrajudicial statement that he penetrated A.N. Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists. *State v.*

*Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019). A.N. testified she saw naked pictures of herself on Barber's cell phone, pictures including "up close" of her vagina, and she recalled there being blood on the sheets. This evidence, coupled with Barber's admission to A.N., gives rise to the logical inference that penetration occurred. We reject Barber's argument to the contrary.

JURY INSTRUCTIONS

Barber's second assigned error raises two issues related to the jury instructions. The first is that the district court erred in instructing the jury in regard to "without consent." Barber takes issue with two instructions in particular: The instruction on the elements of the crime, and an instruction defining "without consent." The elements of the crime instruction explained in part as follows:

ELEMENTS

The elements of first degree sexual assault are:

1. That [Barber] subjected [A.N.] to sexual penetration; and

2. That [Barber] did so either (a) without [A.N.'s] consent, or (b) when he knew or should have known that [A.N.] was mentally or physically incapable of resisting or appr[a]ising the nature of [Barber's] conduct; and

3. That [Barber] did so on or about the date charged in Dawes County, Nebraska.

EFFECT OF FINDINGS

If you decide the state proved each element of the crime beyond a reasonable doubt, then you must find [Barber] guilty of that crime. Otherwise, you must find [Barber] not guilty of that crime.

The elements portion of the instruction tracked the language of Neb. Rev. Stat. § 28-319(1) (Reissue 2016) and instructed the jury on two theories—that Barber subjected A.N. to sexual penetration without the consent of A.N., in violation of § 28-319(1)(a), or alternatively, when Barber knew or should have known that A.N. was mentally or physically incapable of

resisting or appraising the nature of her conduct, in violation of § 28-319(1)(b).

The second instruction that Barber takes issue with defined "without consent" as follows:

**Without consent** means:

a) (i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and

c) A victim need not resist verbally or physically where it would be useless or futile to do so.

A victim may be found mentally or physically incapable of resisting or appraising the nature of their conduct if the victim experiences a significant abnormality, such as severe intoxication, and [Barber] knew or should have known of the victim's severe intoxication.

[14] The first part of this instruction defining "without consent" tracked the language of Neb. Rev. Stat. § 28-318(8) (Reissue 2016). The last paragraph of the instruction is a correct statement of the law regarding the incapacity to resist or appraise the nature of the conduct. See *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002) (under statutory provision governing commission of first degree sexual assault when alleged attacker knew or should have known alleged victim was mentally or physically incapable of resisting or appraising nature of his or her conduct, analysis in determining if such provision was violated requires existence of significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on part of alleged victim, and knowledge of abnormality on part of alleged attacker).

Barber argues the district court should not have instructed the jury as to "without consent," because the State failed to present any evidence to support the theory that A.N. did not consent and because it created a conflict with the lack of capacity to consent theory, subjecting him to prejudice.

[15,16] Barber concedes that he did not object to any of the jury instructions at the time of trial. As such, we review for plain error. The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

[17] Barber contends that the State's entire case was based on the theory that he committed first degree sexual assault by subjecting A.N. to sexual penetration when Barber knew or should have known that A.N. was mentally or physically incapable of resisting or appraising the nature of her conduct. A victim's lack of consent is not an element of the crime of sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct. *In re Interest of K.M.*, 299 Neb. 636, 910 N.W.2d 82 (2018). Barber argues that because the State did not present any evidence that he compelled A.N. to submit due to threat of force or coercion, any evidence that A.N. expressed a lack of consent through words or conduct, or any evidence that he used deception to obtain consent, the court erred in instructing the jury on the alternative sexual assault theory of "without consent." We agree. Combining the definition of "without consent" with "incapable of resisting" in a single instruction, coupled with counsel's use of the two phrases interchangeably as explained below, made the instructions ambiguous and capable of misleading the jury. Accordingly, we conclude that the district court committed

plain error by instructing the jury on the theory of "without consent."

[18-21] However, our analysis does not end there. Alleged errors in a jury instruction are examined using a two-step process. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019). First, the court reviews the case based on the errors assigned and argued, or it may find plain error. Second, when an error is identified, the court considers whether the error was harmless or prejudicial. *Id.* Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Id.* Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id.* When examining for harmless error, the court may look at a variety of factors including the jury instructions as a whole, the evidence presented at trial, and the closing arguments. *Id.*

We find *State v. Dady, supra*, instructive in determining whether the jury instruction error was harmless. In that case, the defendant was convicted of first degree sexual assault and on appeal alleged, among other errors, that the trial court erred in giving a jury instruction that incorrectly stated the law. The Nebraska Supreme Court concluded that although the instruction at issue contained essentially correct definitions of applicable terms, it was ambiguous and capable of misleading the jury and thus, erroneous.

The *Dady* court further determined that the potentially misleading ambiguity of the instruction did not in fact mislead the jury. It concluded that the jury's verdict was surely unattributable to the erroneous instruction, because the instructions, taken as a whole, combined with the evidence and arguments presented at trial, clarified the ambiguity and the jury was not misled by the ambiguous instruction.

[22] In the present case, we look to the remarks made in the opening statements and closing arguments, as well as the manner in which the evidence was presented. During opening statements, the prosecutor seemed to equate lack of consent with the lack of capacity to consent due to intoxication. He stated, "[A.N.] was not capable of consenting. In fact, she didn't consent. In fact, she doesn't even know exactly what happened to her other than what [Barber], the defendant, told her that morning." Barber's position was that she did consent and that in fact, she initiated the encounter. Barber's counsel stated, "And at the end of this trial — the issue is consent." During closing arguments, the prosecutor told the jury, "You have had absolutely no evidence that that was consensual in any manner whatsoever. [A.N.] didn't know it had taken place. She didn't even know what happened and was having a hard time believing what had happened until he shows this photo." The prosecutor further stated, "The evidence is overwhelming [Barber] knew or should have known [A.N.'s] state. And the evidence is overwhelming that he perpetrated a sexual assault on her." Barber's counsel continued to converge the two concepts during closing arguments. Barber's counsel stated, "When the judge tells you the elements of the crime, it's without her consent. *And without her consent means she had to do something or be unable to do something*, such as from her conduct. And that's what you have to look at here." (Emphasis supplied.) Both parties were using "without consent" synonymously with a lack of capacity to consent. We conclude, therefore, that the jury was not misled by any ambiguity created by the inclusion of "without consent" in the jury instructions, because it was clear the State's theory was incapacity to consent, not that she did not consent. As stated above, Barber agrees that the State's case was based on the theory of incapacity to consent. The court may consider the facts of the case when determining whether a jury instruction was confusing or misleading. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

We conclude that the jury could not have been misled by the erroneous inclusion of "without consent" in the instructions, because the instructions, when taken as a whole, combined with the evidence and arguments presented at trial, clarified any ambiguity such that the jury understood the parties' use of the phrase "without consent" to include the incapacity to consent. Given the manner in which the case was presented, the jury's verdict was surely unattributable to the erroneous inclusion of "without consent," and thus, the erroneous jury instructions were harmless error.

[23] Barber next argues that he was prejudiced by the court's failure to instruct the jury that "the burden of proof never shifts to [Barber]," because this may have caused the jury to believe Barber had a duty to prove A.N. did in fact consent. Brief for appellant at 23. The final instructions delivered by the court specifically instructed the jury that Barber was presumed to be innocent and must be acquitted unless the State proved his guilt beyond a reasonable doubt. Further, the elements instruction included an instruction that the jury must find that the State proved each and every element of the crime beyond a reasonable doubt before it could find Barber guilty of the crime. Admonitions given during the trial reminded the jurors that the charges against Barber are "simply an accusation and nothing more" and "[Barber] has plead [sic] not guilty. He is presumed innocent . . . unless and until you decide that the State has proved him guilty beyond a reasonable doubt." Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). Barber has failed to overcome this presumption.

### Ineffective Assistance of Counsel Claims

[24-26] When a defendant's trial counsel is different from his or her counsel on direct appeal, as is the case here, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant

or is apparent from the record. See *State v. Sinkey*, 303 Neb. 345, 929 N.W.2d 35 (2019). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id.* In order to avoid a procedural bar to a future postconviction proceeding, a claim of ineffective assistance of counsel must be presented with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

Barber raises several claims of ineffective assistance of trial counsel, both before and during trial. Specifically, the claims include his trial counsel's failure to locate, interview, and depose 11 specifically identified material witnesses prior to trial; failure to obtain specifically identified material evidence prior to trial; ineffective assistance during voir dire; failure to call specific witnesses during trial; failure to impeach A.N. and other specifically identified witnesses during trial; failure to impeach three specifically identified witnesses during trial; and failure to object to jury instructions.

[27] In concluding Barber did not suffer any prejudice as a result of the court's instruction error, we have disposed of this posttrial ineffective assistance claim. See *State v. McDaniel*, 17 Neb. App. 725, 771 N.W.2d 173 (2009) (court found record adequate to address counsel's failure to object to erroneous instruction on prejudice prong of test for ineffective assistance of counsel, and given resolution of instruction issue, it followed that defendant was not prejudiced by any shortcoming of trial counsel concerning instruction). But that is the only claim we are able to resolve at this stage of the proceedings. Although we believe all the claims are sufficiently stated to permit a district court to recognize whether the claim was raised in this court, the trial record simply does not permit our

review. As in most cases raising ineffective assistance of counsel claims on direct appeal, the trial record reviewed on appeal is "'devoted to issues of guilt or innocence'" and does not usually address issues of counsel's performance. *State v. Filholm*, 287 Neb. 763, 769, 848 N.W.2d 571, 578 (2014).

## CONCLUSION

For the foregoing reasons, we affirm Barber's conviction and sentence.

AFFIRMED.