Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/23/2024 09:15 AM CST

STATE OF NEBRASKA, APPELLEE, V.
HOPE T. NPIMNEE, APPELLANT.

___ N.W.2d ___

Filed February 23, 2024.    No. S-23-147.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. ____: ____. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.
3. ____: ____. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice.
4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
5. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.
6. **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows

that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.

7. **Criminal Law: Evidence: Jurors.** The "without consent" theory and the "incapable of resisting" theory are two distinct ways of committing the same offense, and thus, where there is evidence of both theories, a juror may determine guilt based on either.

8. **Impeachment: Prior Statements: Evidence: Witnesses.** If a witness being impeached admits to the prior inconsistent statement, then he or she has been impeached and further extrinsic evidence is neither necessary nor generally allowed.

9. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

Hope T. Npimnee was convicted of first degree sexual assault and sentenced to 35 to 40 years' imprisonment. We affirm Npimnee's conviction and sentence.

## BACKGROUND

On July 8, 2021, S.M., who lived in Omaha, Nebraska, was in Lincoln, Nebraska, to celebrate a cousin's birthday. S.M. arrived at approximately 7 or 8 p.m. and spent a few hours in the downtown area of Lincoln with her cousin and friends. S.M. consumed about three drinks during that time. Around 10 or 10:30 p.m., S.M. returned to her vehicle to drive home. While on the way to her vehicle, she met a group of

individuals whom she did not know. That group invited her to go to another bar with them. She agreed and went to that bar, and then on to a second establishment. S.M. testified that she had 1 to 1½ more drinks, for a total of 4 or 4½ drinks that night, but that it was possible that she had more drinks than she remembered.

S.M. testified that she became annoyed with one member of her group and left the group. S.M. stated her intoxication level was an 8 on a 10-point scale. Upon contacting her roommate to come to pick her up in Lincoln, she was reminded by the roommate that she had previously arranged a ride with the roommate while at the second bar and that the roommate was already on her way. S.M. and her roommate both testified that for safety reasons, each had "shared" their location (on their cell phones) with the other on an indefinite basis.

After leaving the second establishment, which was located at 11th and M Streets, S.M. ended up on a bench near a bar at the corner of 14th and P Streets—several blocks in the opposite direction from her vehicle—at approximately 2 a.m. S.M. testified she remembered that a man, later identified as Npimnee, began conversing with her. Though she does not remember doing so, she apparently got into Npimnee's vehicle.

S.M. testified that she next remembered being parked in a parking lot with Npimnee, who left the vehicle and reentered it on the passenger side. S.M. testified that Npimnee unbuttoned and removed her jean shorts and that she told him, "[N]o, this isn't happening," but that Npimnee did not stop. S.M. testified that Npimnee performed oral sex on her as she continued to say no, and she further testified that she continued to feel her intoxication level was an 8 or 9 on a 10-point scale. S.M. further testified that Npimnee did not stop until a police officer drove upon the scene and stopped behind Npimnee's vehicle.

S.M. testified that she immediately got out of Npimnee's vehicle, "pulled [her shorts] up," and reported the incident to the officer. On cross-examination, S.M. admitted that she

told law enforcement that Npimnee penetrated her with his finger. She further testified that it was "possible" she also told law enforcement that Npimnee tried to penetrate her with his penis and that he might have exposed his penis to her. By the time of trial, S.M. testified only that Npimnee performed oral sex on her.

After her initial report to the officer, S.M. was taken to the police station to make a formal statement. Her roommate arrived later and joined S.M. at the police station. The roommate's testimony, as well as a history of text and social media messages between S.M. and her roommate (replete with misspellings and other indicators of possible intoxication) were also offered into evidence. S.M. testified that she felt less intoxicated as she was giving her statement to law enforcement at the police station—perhaps a 6 or 7 on a 10-point scale. S.M. went to the hospital for an examination by a sexual assault nurse examiner and a blood draw. The blood draw revealed that S.M.'s blood alcohol level was a .109 as of approximately 5:45 a.m.

Npimnee initially denied all sexual contact with S.M. He eventually gave a statement that he and S.M. had been kissing and that he moved to the passenger side of the vehicle and attempted oral sex on S.M. Npimnee said that S.M. told him "no," so he stopped. It was at about this time, according to Npimnee, that the officer arrived.

DNA testing was done on swabs taken from Npimnee, while still on the scene of the incident, as well as on swabs obtained from S.M.'s examination. That testing showed that Npimnee's hands contained a mixture in which there was "very strong support" for S.M.'s inclusion as a major female contributor. S.M.'s vaginal, mons pubis, and external genital swabs all tested presumptively positive for saliva. Further testing on the mons pubis swab showed "very strong support" that both Npimnee and S.M. were contributors to the mixture found on that swab.

"YSTR testing," which looks specifically at male DNA, was completed on the vaginal and external genital swabs, because autosomal or regular DNA testing could not be completed because of the overwhelming presence of female DNA. The testing of the vaginal and external genital swabs showed that on both swabs Npimnee was included in a profile with a statistic that, "of 13,228 YSTR DNA profiles, this profile was observed zero times [and was] not expected to occur more frequently than one in every 4,461 . . . males" in the United States.

Following a jury trial, Npimnee was convicted of first degree sexual assault and sentenced to 35 to 40 years' imprisonment. Npimnee appeals.

## ASSIGNMENTS OF ERROR

Npimnee assigns that the district court erred in (1) instructing the jury on two alternative and contradictory theories of the case; (2) instructing the jury on the theory that S.M. was so intoxicated as to be incapable of consenting, because there was no evidence that S.M. was severely intoxicated; (3) failing to instruct the jury on the defense of consent; (4) restricting Npimnee's ability to cross-examine S.M.; and (5) denying Npimnee's motion to dismiss at the conclusion of the State's case. Npimnee also assigns that his trial counsel was ineffective.

## STANDARD OF REVIEW

[1-3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[1] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[2] Failure to object to a jury

---

[1] *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023).

[2] *Id.*

instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice.[3]

[4] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[4] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

[5,6] Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.[6] In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.[7]

## ANALYSIS

*Jury Instructions and Sufficiency of Evidence.*

Npimnee makes several assignments of error relating to jury instructions. He argues that the district court erred in

---

[3] *Id.*

[4] See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

[5] *Id.*

[6] See *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022).

[7] See *id.*

(1) instructing the jury on two alternative and contradictory theories of the case; (2) instructing the jury on the theory that S.M. was so intoxicated as to be incapable of consenting, because there was no evidence that S.M. was severely intoxicated; and (3) failing to instruct on the defense of consent. Npimnee did not object to any of the instructions given to the jury, nor did he offer any proposed instructions. Given this failure, we review the record for plain error.

We turn first to Npimnee's assertion that the jury was erroneously instructed as to alternative and contradictory theories of the case. As relevant, the jury was instructed as follows:

Regarding the crime of Sexual Assault, 1st Degree, the State must prove beyond a reasonable doubt that

1. . . . Npimnee did subject [S.M.] to sexual penetration; and

2. (a) . . . Npimnee knew or should have known that [S.M.] was mentally or physically incapable of resisting or appraising the nature of his conduct; or

(b) . . . Npimnee did so without the consent of [S.M.]; and

3. . . . Npimnee did so on or about July 9, 2021, in Lancaster County, Nebraska.

Under the law, the elements described in ¶2(a) and ¶2(b) constitute a single offense. As a result, you need not agree unanimously on whether (a) . . . Npimnee knew or should have known that [S.M.] was mentally or physically incapable of resisting or appraising the nature of his conduct or (b) whether . . . Npimnee did so without the consent of [S.M.], so long as you agree unanimously that the State has established either of the elements described in ¶2(a) and ¶2(b) beyond a reasonable doubt.

In his first assignment of error, Npimnee contends that these two theories of prosecution—S.M. did not consent and S.M. was "mentally or physically incapable of resisting or

appraising the nature of [Npimnee's] conduct"—are contradictory and that thus, it was error to instruct as to both. In support of this, Npimnee cites *State v. Barber*.[8]

We find *Barber* distinguishable. There, the Nebraska Court of Appeals found that the district court erred in instructing the jury on a "without consent" theory and an "incapable of resisting" theory, concluding such was misleading. But in *Barber*, the Court of Appeals found that the "without consent" instruction was misleading because there was no evidence presented that the victim had expressed a lack of consent or had not consented.

[7] Conversely, this court has held on multiple occasions that the "without consent" theory and the "incapable of resisting" theory are two distinct ways of committing the same offense and that thus, where there is evidence of both, a juror may determine guilt based on either.[9] Because the State may charge and pursue a conviction based on these alternative theories, the instructions were not an incorrect statement of law.

Moreover, both theories were supported by the evidence at trial. As to consent, S.M. testified that she told Npimnee "no" several times prior to and during the oral sex act performed upon her. S.M. further testified that Npimnee did not stop until law enforcement arrived on the scene.

As to this point, Npimnee contends that the police camera footage shows that he was standing away from his vehicle prior to when law enforcement stopped near his vehicle and that such is proof that he ceased any activity when S.M. told him "no." However, the record shows that Npimnee could have noticed the arrival of law enforcement in the parking lot at a point in time prior to law enforcement's affirmatively engaging Npimnee. This supports S.M.'s assertion that Npimnee continued to engage in oral sex with her until law enforcement's arrival at the scene.

---

[8] *State v. Barber*, 28 Neb. App. 820, 948 N.W.2d 306 (2020).

[9] See *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

Having concluded there was evidence that S.M. told Npimnee "no," we turn to whether there was sufficient evidence to support the theory that S.M. was incapable of resisting. This, in turn, leads to another of Npimnee's assignments of error—that there was insufficient evidence to show that S.M. was so intoxicated as to be incapable of resisting. This is without merit.

S.M. testified that she had consumed at least 4 to 4½ drinks and that she could have consumed more but did not remember doing so. S.M. indicated that her intoxication level was an 8 or 9 on a 10-point scale. Her blood alcohol level was .109 several hours after this incident. Furthermore, S.M. testified that she had gaps in her memory, including not remembering how she ended up in Npimnee's vehicle or remembering how she got to the parking lot where the sexual penetration occurred. S.M.'s roommate testified that S.M. contacted her for a ride shortly after they had already arranged for a ride and that she could tell S.M. was getting more and more intoxicated and was starting to slur her words. S.M. walked several blocks in the wrong direction when attempting to return to her vehicle. There is also evidence of texts and social media messages containing slurred speech and numerous misspellings that are indicative of S.M.'s intoxication level.

Contrary to Npimnee's argument on appeal, our case law does not set forth some mythical level of intoxication after which a person is considered to have a "significant abnormality" or to be "severe[ly] intoxicat[ed]" sufficient to render the person incapable of resisting for purposes of Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016).[10] A victim can be incapable of consent without suffering from a "mental impairment" and can be incapable of resisting or appraising the nature of his or her conduct without suffering from an "abnormality" or

---

[10] See, e.g., *State v. Rossbach*, 264 Neb. 563, 572, 650 N.W.2d 242, 250 (2002).

"substantial mental or physical impairment,"[11] like "severe intoxication."[12]

Section 28-319(1)(b) requires an "individualized inquiry" into the victim's capacity,[13] and the evidence in this case was sufficient for a jury to find that S.M. was so intoxicated as to be incapable of resisting Npimnee's actions. There is no merit to this assignment of error.

We turn to Npimnee's final assignment of error regarding jury instructions—that the district court erred in not instructing the jury as to his defense of consent. In support of this contention, Npimnee directs us to *State v. Koperski*.[14] In that case, we held that the district court erred in failing to instruct the jury as to consent, where such was the defendant's defense, and that this was confusing and misleading to the jury.

We find *Koperski* distinguishable because it predates a change in the underlying statute defining and prohibiting first degree sexual assault. At the time *Koperski* was decided, first degree sexual assault did not include the element of consent. In other words, the State did not need to prove a lack of consent to the defendant's alleged sexual penetration; thus, the defendant was entitled to an instruction on a defense of consent if there was evidence of consent. But the crime of first degree sexual assault now requires the State to show, among other elements, that sexual penetration was "without the consent of the victim."[15]

Likewise, in this case, the information charging Npimnee alleged either that Npimnee knew S.M. was incapable of resisting or that she did not consent. As is also noted above, the

---

[11] *State v. Dady*, 304 Neb. 649, 666, 936 N.W.2d 486, 500 (2019) (internal quotation marks omitted).

[12] *State v. Rossbach, supra* note 10, 264 Neb. at 572, 650 N.W.2d at 250.

[13] *State v. Dady, supra* note 11, 304 Neb. at 661, 936 N.W.2d at 497.

[14] *State v. Koperski*, 254 Neb. 624, 578 N.W.2d 837 (1998).

[15] See § 28-319(1)(a).

jury was properly instructed as to these elements. The jury was further instructed that "'[w]ithout consent'" meant:

> (a) (i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;
>
> (b) the victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and
>
> (c) a victim need not resist verbally or physically where it would be useless or futile to do so.

Unlike in *Koperski*, Npimnee's jury was required to find that the sexual contact was without consent (or that S.M. was incapable of resisting, which does not implicate consent as an element, nor allow it as a defense) in order to convict Npimnee. The jury was instructed as such. An additional instruction as to the defense of consent (which, we note, was not sought at trial) was not warranted here. There is no merit to this assertion on appeal.

*Cross-Examination.*

In addition to jury instructions, Npimnee assigns on appeal that he should have been permitted to cross-examine witnesses regarding statements S.M. made that Npimnee had penetrated her with his finger and attempted to penetrate her with his penis. Those questions were asked of S.M., who admitted on cross-examination that she made the statements. The State objected when Npimnee attempted to elicit those statements in the testimony of law enforcement officers who interviewed S.M. The court sustained the State's objection.

Neb. Rev. Stat. § 27-613 (Reissue 2016) provides:

> (1) In examining a witness concerning a prior state-
> ment made by him, whether written or not, the statement
> need not be shown or its contents disclosed to him at that
> time, but on request the same shall be shown or disclosed
> to opposing counsel.
>
> (2) Extrinsic evidence of a prior inconsistent state-
> ment by a witness is not admissible unless the witness is
> afforded an opportunity to explain or deny the same and
> the opposite party is afforded an opportunity to inter-
> rogate him thereon, or the interests of justice otherwise
> require. This provision does not apply to admissions of
> a party-opponent as defined in subdivision (4)(b) of sec-
> tion 27-801.

[8] Also relevant is this court's decision in *State v. Johnson*,[16]
where we held that if a witness being impeached admits to
the prior inconsistent statement, then he or she has been
impeached and further extrinsic evidence is neither necessary
nor generally allowed. The district court found this applicable,
and we agree.

In this case, the record shows that S.M. initially told offi-
cers that Npimnee had digitally penetrated her and that he
might have attempted penile penetration in addition to expos-
ing himself to her. She later gave statements indicating that
neither digital nor penile penetration was attempted. At trial,
S.M. testified on direct that Npimnee only performed oral
sex and she agreed on cross-examination that she had previ-
ously made certain statements inconsistent with her later state-
ments and her testimony at trial. Thus, S.M. was effectively
impeached with her prior statements, and those statements
were not admissible as impeachment during the testimony of
subsequent witnesses as they were cumulative to S.M.'s own

---

[16] See *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 1326 (1985) (*abrogated on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996)).

admission on cross-examination. There is no merit to this assignment of error.

*Ineffective Assistance of Counsel.*

Finally, Npimnee assigns as error the ineffective assistance of trial counsel.

[9] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance.[17] But in this case, Npimnee assigns only that his trial counsel was ineffective. His assignments of error fail to allege the specific ways in which trial counsel was ineffective. As such, Npimnee has failed to preserve any specific allegation relating to the ineffective assistance of counsel on direct appeal.

## CONCLUSION

There was no error in the trial court's instruction to the jury and no error in the trial court's decision not to allow continued impeachment of S.M.'s prior statements. In addition, Npimnee's allegations of ineffective assistance of counsel are insufficiently alleged and are not preserved for our review. The decision of the district court is affirmed.

Affirmed.

---

[17] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).