Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/12/2026 08:10 AM CDT

State of Nebraska, appellee, v.
Evan J. Mielak, appellant.
___ N.W.3d ___

Filed June 12, 2026.    No. S-24-064.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

3. **Jury Instructions: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

4. **Statutes: Words and Phrases.** When terms in a statute are not specifically defined by the Legislature, principles of statutory interpretation generally require courts to give such terms their plain and ordinary meaning.

5. **Criminal Law: Legislature: Words and Phrases.** When the Legislature has defined specific terms for the purpose of the Nebraska Criminal Code, courts will apply such definitions unless the context requires otherwise.

6. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

7. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

8. **Sexual Assault.** For purposes of expressing a lack of consent through conduct under Neb. Rev. Stat. § 28-318(8)(a)(iii) (Cum. Supp. 2024), a victim's conduct can include both actions and omissions and can include a series of acts and omissions.

9. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

10. **Jury Instructions: Records: Appeal and Error.** It is incumbent upon an appellant to supply a record which supports his or her appeal, and when a proposed instruction is not included in the record on appeal, the appellate court has no instruction to review in order to determine whether it ought to have been given.

Petition for further review from the Court of Appeals, PIRTLE, BISHOP, and ARTERBURN, Judges, on appeal thereto from the District Court for Lancaster County, KEVIN R. MCMANAMAN, Judge. Judgment of Court of Appeals affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

STACY, J.

After a jury trial, Evan J. Mielak was convicted of first degree sexual assault for digitally penetrating his roommate while she was intoxicated and appeared to be asleep or unconscious. The Nebraska Court of Appeals affirmed his conviction.[1] Mielak seeks further review, challenging the sufficiency of the evidence to support his conviction and arguing that it

---

[1] *State v. Mielak*, 33 Neb. App. 309, 16 N.W.3d 143 (2025).

was error to refuse his proposed jury instruction. We granted further review to address two issues: (1) what type of conduct is required to express a lack of consent for purposes of Neb. Rev. Stat. § 28-318(8)(a)(iii) (Cum. Supp. 2024) and (2) whether an intoxicated victim can be "mentally or physically incapable of resisting or appraising" the nature of the conduct under Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016) if the victim was aware of the penetration as it was occurring. Although our reasoning differs somewhat from that articulated by the Court of Appeals, we affirm its decision.

## I. BACKGROUND

On June 7, 2023, Mielak was charged in the district court for Lancaster County with the first degree sexual assault of H.S. in violation of § 28-319(1). The information alleged that on or about April 7, 2023, Mielak subjected H.S. to sexual penetration either without consent or when Mielak knew or should have known that H.S. was mentally or physically incapable of resisting or appraising the nature of his conduct. Mielak pled not guilty, and the matter proceeded to trial.

Over the course of a 3-day jury trial, the State called multiple witnesses, including H.S. and four of her roommates. Mielak did not testify and did not call any witnesses. To address the issues raised on further review, we summarize the trial evidence viewed in the light most favorable to the State.[2]

### 1. Trial Evidence

In April 2023, H.S. shared an apartment with her sister and four male roommates, including Mielak. H.S. and her sister shared a bedroom, and they also shared exclusive use of the bathroom nearest their bedroom; the roommates agreed that males were not allowed in that bathroom.

---

[2] See *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025) (when reviewing criminal conviction for sufficiency of evidence, appellate court views evidence in light most favorable to prosecution).

On April 7, 2023, a group of roommates, including H.S., her sister, and Mielak, were playing a drinking game in the apartment. The players consumed large amounts of alcohol in a short period of time. After consuming about five alcoholic seltzer drinks in 1 hour, H.S. was intoxicated and began to feel unwell. She left the group and went to her bathroom to vomit. After vomiting, H.S. still felt unwell, so she stayed in the bathroom with the door closed. Eventually, H.S. fell asleep next to the toilet, lying face down on the bathroom floor.

Several of the roommates realized H.S. was "pretty drunk," and they encouraged her sister to check on her. The sister went to the bathroom and offered H.S. some water. H.S. mumbled something but did not move or reach for the water, so the sister set the water next to H.S. and left the bathroom. After closing the bathroom door, the sister encountered Mielak standing just outside the bathroom door. Mielak offered to help take care of H.S., but the sister told Mielak that she would take care of things, and she reminded Mielak he was not allowed in that bathroom. The sister then walked to the opposite end of the apartment to take a phone call.

H.S. testified that she remembered only parts of what happened after she went into the bathroom. She recalled getting sick, her sister coming in to check on her and bringing her water, and falling asleep next to the toilet while lying on her stomach. H.S. also recalled waking up and realizing that another person was in the bathroom with her. H.S. remained still, face down on the floor, as the person crouched down next to her. She "froze up" and "couldn't move" when she felt her pants being pulled down and fingers being inserted into her vagina. She believed the person was Mielak, because she could hear the other male roommates talking in the living room. H.S. was "really scared" and did not move, speak, or open her eyes during the penetration. When the penetration stopped, H.S. could hear what sounded like the person "touching himself." She remained still and did not speak

or open her eyes because she was "scared that he might do something worse" if she reacted. Eventually, H.S. heard the person leave the bathroom and shut the door. She stayed in the bathroom for a short period of time and cried and then left to search for her sister and report what had occurred.

H.S. found her sister at the other end of the apartment talking on the phone. When the sister saw that H.S. was upset and crying, she ended her phone conversation. The sister testified H.S. told her that Mielak had "fingered her" in the bathroom and that H.S. heard him "jerking off." The sister confronted Mielak about the assault, after which H.S. and her sister left the apartment.

After they left, one of the male roommates asked Mielak what happened, and Mielak began crying and said he "screwed up" with H.S. and had "inappropriately touched" her. A few days later, Mielak told a different roommate that he had "inappropriately touched" H.S. and that she had asked him to move out of the apartment, which he did.

One week later, H.S reported the sexual assault to law enforcement, who arranged for H.S. to make a controlled phone call to Mielak. The call was recorded, received as evidence at trial, and played for the jury. During the recorded call, H.S. told Mielak that she needed closure, and she accused Mielak of "finger[ing]" her. Mielak became very emotional and sobbed throughout the call. He apologized to H.S. repeatedly, saying things like "You shouldn't have to hear me cry, I did something horrible"; "I don't know what I was thinking"; "I feel like a monster, I'm so sorry"; "I don't know what I expected"; and "I can't express how sorry I am."

After the State rested its case in chief, Mielak made an oral motion to dismiss, arguing that the State had not adduced sufficient evidence to prove the material elements of first degree sexual assault under either of the two theories charged. The court overruled the motion, and Mielak rested without adducing any evidence.

## 2. JURY INSTRUCTIONS

The jury was given an elements instruction stating that to find Mielak guilty of first degree sexual assault, the State had to prove beyond a reasonable doubt that

> 1. [Mielak] did subject [H.S.] to sexual penetration;
>
> 2. [Mielak] did so:
>
> (a) without the consent of [H.S.]; or
>
> (b) when [Mielak] knew or should have known that [H.S.] was mentally or physically incapable of resisting or appraising the nature of his conduct; and
>
> 3. Did so on or about April 7, 2023, in Lancaster County, Nebraska.

This instruction was based on § 28-319(1). The jury was further instructed:

> The elements described in paragraph 2 (a) and 2 (b) constitute a single element of the offense of Sexual Assault 1st Degree. As a result, you need not agree unanimously on whether [Mielak] did so without the consent of [H.S.] or whether [Mielak] knew or should have known that [H.S.] was mentally or physical[ly] incapable of resisting or appraising the nature of his conduct, so long as you agree unanimously that the State has established the element described in paragraph 2 (a) or 2 (b) beyond a reasonable doubt.[3]

And a separate definitional instruction based on the language of § 28-318(8) stated:

> "Without consent" means:
>
> (a) (i) The victim was compelled to submit due to the use of force or threat of force or coercion or (ii) the victim expressed a lack of consent through words or (iii) the victim expressed a lack of consent through conduct;

---

[3] See, e.g., *State v. Npimnee*, 316 Neb. 1, 8, 2 N.W.3d 620, 627 (2024) (emphasizing "'without consent'" and "'incapable of resisting'" theories are two distinct ways of committing same offense of first degree sexual assault).

(b) the victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and

(c) a victim need not resist verbally or physically where it would be useless or futile to do so.

(d) coercion shall include nonphysical force.

You are to use your common sense and general knowledge that everyone has in determining the meaning of any other term not defined above.

During the formal jury instruction conference, Mielak objected to including the phrase "should have known" in the elements instruction without providing a separate definition. Although Mielak conceded that this phrase was a verbatim quote of the statutory language in § 28-319(1)(b), he argued that without a separate definition explaining criminal negligence, the phrase "was 'below the constitutional requirement of some element of mens rea'"[4] and would potentially allow for a felony conviction based upon ordinary negligence. While arguing his objection, Mielak referenced a proposed jury instruction purportedly defining the phrase "should have known," but the proposed instruction was not included in the appellate record, and the language of the proposed instruction is not apparent from the appellate record. The district court overruled Mielak's objection and declined to give the proposed instruction.

### 3. Closing Arguments

The State's theory at trial was that Mielak knew H.S. was highly intoxicated and that he believed she was either asleep or passed out when he sexually assaulted her. According to the State, the evidence proved beyond a reasonable doubt that Mielak was guilty of first degree sexual assault under either of the two theories charged.

---

[4] *Mielak, supra* note 1, 33 Neb. App. at 316, 16 N.W.3d at 151.

In arguing that the sexual penetration was "without the consent of the victim" under § 28-319(1)(a), the State acknowledged that H.S. did not express a lack of consent through words, but it argued there was ample evidence that she expressed a lack of consent through her conduct that included going into her private bathroom where males were not allowed, closing the door, and falling asleep on the floor while fully clothed. The State argued this conduct plainly showed a lack of consent to sexual activity and "[t]here's no other way that that can be read."

In arguing that Mielak "knew or should have known that the victim was mentally or physically incapable of resisting or appraising" the nature of his conduct under § 29-319(1)(b), the State relied on evidence showing what Mielak knew about H.S.' level of intoxication, what he saw when he opened the bathroom door, what he did while inside the bathroom, and how he reacted later when he was confronted about his actions. The State emphasized that Mielak knew H.S. was intoxicated to the point of being ill; that he saw her lying face down on the bathroom floor with her eyes closed; and that she did not speak, move, or open her eyes when he pulled down her pants and digitally penetrated her. Based on this evidence, the State suggested that Mielak believed H.S. either was unconscious or was asleep and that he therefore knew or should have known she was incapable of resisting his sexual contact. The State argued that this conclusion was supported by Mielak's reaction when he was confronted about what occurred in the bathroom, including his admitting that he touched H.S. "inappropriately" and describing himself as a "horrible person" and a "monster."

In Mielak's closing argument, he did not deny that he digitally penetrated H.S. in the bathroom; instead, he argued there was insufficient evidence to prove either that he did so "without consent" or that he "knew or should have known" that H.S. was incapable of resisting the sexual contact. Mielak

emphasized that H.S.' testimony showed she was aware of the penetration as it was occurring, and he argued that her ability to recall and recount the penetration showed that her level of intoxication was not severe enough to render her incapable of resisting or appraising the sexual conduct. Mielak also argued that because H.S. never told him to stop or physically resisted his sexual contact, she failed to express a lack of consent through either words or conduct. Summarized, it was Mielak's theory that "[e]ither [H.S.] knows what's going on because she's not intoxicated . . . or she's so drunk that she doesn't know what happened to her; but it can't be both."

## 4. Verdict, Posttrial Motions, and Sentencing

The jury returned a general verdict finding Mielak guilty of first degree sexual assault. Mielak moved for a new trial or, in the alternative, to vacate the judgment of conviction. In support, he argued the evidence was insufficient to support a conviction under either a "without consent" theory or an "incapable of resisting or appraising" theory. The district court overruled the postverdict motions, reasoning the evidence was sufficient to convict Mielak under either theory.

The district court sentenced Mielak to imprisonment for a term of not less than 4 years nor more than 8 years. Mielak filed a timely notice of appeal, represented by trial counsel.

## 5. Court of Appeals

Mielak assigned multiple errors before the Court of Appeals, but we discuss only those raised again on further review. Mielak assigned, consolidated and restated, that (1) the evidence was insufficient to prove that the sexual penetration was without consent, (2) the evidence was insufficient to prove that Mielak knew or should have known that H.S. was incapable of resisting or appraising the nature of the sexual conduct, and (3) it was error not to give his proposed jury instruction.

The Court of Appeals found no merit to any of these assigned errors, and it affirmed the judgment of the district court. We discuss its reasoning later in this opinion.

### 6. Petition for Further Review

Mielak timely petitioned for further review, arguing that the district court and the Court of Appeals erred in construing and applying Nebraska's first degree sexual assault statutes. We granted further review to address (1) Mielak's assertion that in order for a victim to express a lack of consent through conduct, the conduct must be "active"[5] and related "to the direct sexual contact,"[6] and (2) his assertion that because H.S. testified at trial that she was aware of the sexual penetration as it was occurring and she was able to accurately describe it, no reasonable jury could find that her intoxication rendered her "mentally or physically incapable of resisting or appraising the nature of [the] conduct" for purposes of § 28-319(1)(b).

## II. ASSIGNMENTS OF ERROR

On further review, Mielak assigns, consolidated and restated, that the Court of Appeals erred in affirming his conviction because (1) the evidence was insufficient to prove that the sexual penetration was without consent, (2) the evidence was insufficient to prove that Mielak knew or should have known that H.S. was incapable of resisting or appraising the nature of his conduct, and (3) it was error not to give his proposed jury instruction.

## III. STANDARD OF REVIEW

[1] In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

---

[5] Brief for appellant in support of petition for further review at 5 (internal quotation marks omitted).

[6] Brief for appellant at 18.

of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

[2] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[8]

[3] Whether jury instructions given by a trial court are correct is a question of law.[9] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[10]

## IV. ANALYSIS

### 1. Sufficiency of Evidence

Because Mielak's first two assignments of error challenge the sufficiency of the evidence to convict him of first degree sexual assault, we begin our analysis by reviewing the essential elements of the crime. First degree sexual assault is defined in § 28-319(1), which provides, as relevant here:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, [or] (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree.

Section 28-319(1) recognizes alternative ways to commit the offense of first degree sexual assault.[11] In other words, sexual penetration "without the consent of the victim" under § 28-319(1)(a) and sexual penetration of a victim who is "incapable of resisting" under § 28-319(1)(b) represent two distinct ways to commit the same offense,[12] and "where

---

[7] *Vazquez, supra* note 2.

[8] *State v. Weber*, 320 Neb. 934, 31 N.W.3d 229 (2026).

[9] *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006); *State v. Anderson*, 269 Neb. 365, 693 N.W.2d 267 (2005).

[10] *Molina, supra* note 9.

[11] See *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

[12] See *Npimnee, supra* note 3.

there is evidence of both, a juror may determine guilt based on either."[13]

Mielak was charged in the alternative under both § 28-319(1)(a) and (1)(b). At trial, he did not dispute that he subjected H.S. to sexual penetration.[14] Instead, he argued that the State failed to prove either that the penetration was without H.S.' consent as prohibited by § 28-319(1)(a) or that Mielak knew or should have known that H.S. was incapable of resisting or appraising the nature of his conduct as prohibited by § 28-319(1)(b). The district court concluded the evidence was sufficient to submit both alternative theories to the jury, and the jury returned a general verdict finding Mielak guilty of first degree sexual assault. The Court of Appeals affirmed, and the relevant question on further review is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime of first degree sexual assault under either of the alternative theories charged.[15]

Ordinarily, an appellate court will affirm a judgment of conviction if the evidence was sufficient to prove any one of the State's alternative theories, and it need not consider whether the evidence was sufficient to support each alternative charged.[16] But for the sake of completeness, the Court of Appeals elected to address the sufficiency of the evidence

---

[13] *Id*. at 8, 2 N.W.3d at 627. See *State v. Eagle Bull*, 285 Neb. 369, 827 N.W.2d 466 (2013). See, also, *Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).

[14] See § 28-318(6) (defining sexual penetration to include any intrusion of any part of actor's body into genital opening of victim's body).

[15] See *Vazquez, supra* note 2.

[16] See, *McCurdy, supra* note 11, 301 Neb. at 354, 918 N.W.2d at 300 (holding when defendant charged under alternative theories, "'the judgment of conviction must be affirmed if the evidence is sufficient to support either of the State's alternative theories of guilt'"); *State v. Knutson*, 288 Neb. 823, 843, 852 N.W.2d 307, 324 (2014) (holding "judgment must be affirmed if [evidence] was sufficient to support any of the State's three theories of guilt").

under both alternatives. We do likewise and address each theory in turn.

### (a) Evidence That Sexual Penetration Was "Without Consent"

For purposes of proving that sexual penetration was "without the consent of the victim" under § 28-319(1)(a), the Legislature has defined "without consent" to mean:

(a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

(b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and

(c) A victim need not resist verbally or physically where it would be useless or futile to do so[.][17]

In *State v McCurdy*,[18] we explained that § 28-318(8)(a) sets out four alternative ways to prove that a sexual act was "without consent" of the alleged victim, and we emphasized that "one of the four alternatives set forth in subsection (a) must be shown."[19] The court in *McCurdy* also explained the role of subsections (b) and (c) in § 28-318(8), stating that these are not additional independent ways to show that a sexual act was "without consent," but, rather, describe the nature of the proof necessary to establish one of the four alternatives set forth in subsection (8)(a).[20]

---

[17] § 28-318(8).

[18] *McCurdy, supra* note 11.

[19] *Id*. at 355, 918 N.W.2d at 301.

[20] *Id*.

Of the four statutory alternatives for proving "without consent" under § 28-318(8)(a), the parties focus their arguments on just one: whether the evidence was sufficient to show that H.S. "expressed a lack of consent through conduct."[21] To date, no Nebraska Supreme Court opinion has directly addressed what sort of evidence is required to prove a lack of consent through conduct, and the parties advance competing interpretations of the term "conduct" for purposes of the sexual assault statutes. Before we summarize the parties' positions, we review the settled principles of statutory construction that guide our analysis.

### (i) Principles of Statutory Construction

[4-7] When terms in a statute are not specifically defined by the Legislature, our principles of statutory interpretation generally require courts to give such terms their plain and ordinary meaning.[22] But when the Legislature has defined specific terms for the purpose of the Nebraska Criminal Code, courts will apply such definitions unless the context requires otherwise.[23] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[24] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[25]

### (ii) Parties' Arguments and Court of Appeals' Reasoning

Mielak makes two arguments regarding the type of conduct that can express a lack of consent. First, he argues that

---

[21] § 28-318(8)(a)(iii).

[22] See *Brown v. State*, 315 Neb. 336, 996 N.W.2d 56 (2023).

[23] See Neb. Rev. Stat. § 28-109 (Reissue 2016).

[24] *Weber, supra* note 8.

[25] *Id.*

"[i]naction [c]annot be [c]onstrued as [c]onduct [e]xpressing a [l]ack of [c]onsent."[26] And second, he contends that only conduct related to the "specific sexual contact, in real time" can express a lack of consent.[27] Based on these arguments, Mielak suggests that evidence of H.S.' conduct prior to the penetration was irrelevant to determining consent, and he suggests that because the evidence showed H.S. "froze up" when she became aware he was pulling down her pants and inserting his fingers into her vagina, there was no evidence that she expressed a lack of consent to the specific sexual contact as it was occurring.

The State disagrees. It relies on a Black's Law Dictionary definition to argue that the term "conduct" necessarily includes both action and inaction.[28] And the State contends that nothing in the language of § 28-318(8)(a)(iii) "limits the victim's conduct that a jury may consider to a specific timeframe in relation to the sexual acts at issue."[29]

The Court of Appeals observed that "[t]he issue of what constitutes conduct under the statute appears to be a novel one."[30] But it rejected Mielak's proposed limits to "conduct" under § 28-318(8)(a)(iii) and deemed it unnecessary to formally adopt the dictionary definition of "conduct" urged by the State, reasoning:

> We find that under the limited facts of this case, "conduct" is not limited solely to active expression, as Mielak argues. According to the Black's Law Dictionary definition, conduct is a more expansive term that encompasses all the ways in which a person behaves in a

---

[26] Brief for appellant at 17.

[27] Brief for appellant in support of petition for further review at 4.

[28] See Black's Law Dictionary 372 (12th ed. 2024) (defining "conduct" as "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds").

[29] Brief for appellee at 24.

[30] *Mielak, supra* note 1, 33 Neb. App. at 323, 16 N.W.3d at 156.

specific context. While we decline to expressly adopt this definition, we find that an individual's conduct is heavily dependent upon the facts of each case. Depending on the circumstances at hand, inaction could be a component of an individual's conduct. With this understanding, we review the evidence in a light most favorable to the State to determine whether the jury could find that under these unique circumstances, H.S.' conduct expressed her lack of consent.[31]

When examining the evidence, the Court of Appeals considered all of H.S.' conduct over the course of the evening, not just her conduct during the sexual penetration, and it concluded there was sufficient evidence for the jury to conclude that "H.S.' conduct communicated the message that she was denying consent to sexual penetration, that her refusal was reasonably made known to Mielak, and that Mielak understood the communication provided to him."[32] The Court of Appeals thus rejected Mielak's argument that the evidence was insufficient to support the theory that H.S. expressed a lack of consent through her conduct and that Mielak therefore sexually penetrated H.S. without her consent.

### (iii) Definition of "Conduct"

Although we agree with the Court of Appeals that it is not necessary to resort to dictionary definitions to construe the meaning of "conduct" as used in § 28-318(8)(a)(iii), we reach that conclusion for a different reason: The Legislature has defined the term "conduct" for purposes of the Nebraska Criminal Code.

Section 28-109 states, "For purposes of the Nebraska Criminal Code, unless the context otherwise requires . . . (5) Conduct shall mean an action or omission and its accompanying state of mind, or, where relevant, a series of acts and

---

[31] *Id*. at 325, 16 N.W.3d at 157.

[32] *Id*. at 326, 16 N.W.3d at 157.

omissions." Generally, the phrase "unless the context otherwise requires" refers to the context within which a defined statutory term is used in a statute's substantive provisions.[33]

[8] Section 28-109(5) defines the term "conduct" in the same context as the term "conduct" is used in § 28-318(8)(a)(iii), and we therefore give it the same meaning. We hold that for purposes of expressing a lack of consent through conduct under § 28-318(8)(a)(iii), a victim's conduct can include both actions and omissions and can include a series of acts and omissions.[34] As such, "conduct" under § 28-318(8)(a)(iii) necessarily includes both action and inaction expressing a victim's lack of consent to sexual contact and can include action and inaction occurring prior to the specific sexual act at issue.

Although this is the first time we have expressly construed the meaning of "conduct" under § 28-318(8)(a)(iii), the definition articulated today is consistent with the approach taken by Nebraska appellate courts for decades.

For example, in *State v. Prado*,[35] the defendant was a stranger who entered the victim's apartment while she was sleeping, got into her bed, and digitally penetrated her. The victim testified that she awoke and felt someone touching her buttocks and then could feel fingers in her vagina, but she did not resist through words or conduct because she was "'half-asleep/half-awake.'"[36]

On appeal, the defendant argued this evidence was insufficient to support a conviction for first degree sexual assault under § 28-319(1)(a) because it failed to show the penetration was without consent. He argued, in part, that the evidence

---

[33] See *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018).

[34] See, also, *State v. Gangahar*, 9 Neb. App. 205, 210, 609 N.W.2d 690, 695 (2000) (holding that issue under § 28-318(8)(a) is "whether [the victim's] words, actions, or inaction" express lack of consent).

[35] *State v. Prado*, 30 Neb. App. 223, 967 N.W.2d 696 (2021).

[36] *Id.* at 228, 967 N.W.2d at 707.

was insufficient because the victim testified she was aware of the penetration as it was occurring but did not resist through words or conduct. The Court of Appeals rejected this argument, reasoning that the jury could consider all the circumstances, including that the defendant entered the apartment and the victim's bed uninvited and penetrated her while she was sleeping, in determining whether the victim had expressed a lack of consent through conduct, and it concluded there was sufficient evidence she had.[37]

Additionally, in *State v. Gangahar*,[38] the Court of Appeals affirmed a conviction in a published opinion, and on further review, we adopted that opinion in its entirety. The relevant issue in *Gangahar* was whether the victim expressed a lack of consent under § 28-318(8)(a). As explained by the Court of Appeals, that statute "puts in issue whether [the victim's] words, actions, or *inaction* made her lack of consent 'genuine and real' sufficient for [the defendant] to reasonably know that there was a refusal to consent to his advances."[39] And in examining the evidence related to expression of lack of consent, the Court of Appeals considered all the relevant circumstances, not just those that occurred at the time of the sexual contact.

The courts in both *Prado* and *Gangahar* reasoned that a victim can express a lack of consent under § 28-318(8)(a)(iii) through both action and inaction, as well as through conduct that occurs both prior to and during the specific sexual act at issue. These cases thus rejected arguments similar to the ones Mielak asserts on further review and applied a definition of "conduct" that is consistent with the one articulated today.

[37] See, also, *State v. Alvarado*, 27 Neb. App. 334, 931 N.W.2d 463 (2019) (holding sexual penetration while victim is sleeping is without consent of victim). Cf. *State v. Moeller*, 1 Neb. App. 1046, 1050, 510 N.W.2d 500, 503 (1993) (suggesting sleeping victim was "not capable of resisting or appraising the nature of her conduct" under § 28-319(1)(b)).

[38] *Gangahar, supra* note 34.

[39] *Id*. at 210, 609 N.W.2d at 695 (emphasis supplied).

In the next section, we apply that definition to the evidence adduced at trial to determine whether a reasonable jury could find that H.S.' conduct expressed a lack of consent.

### (iv) Evidence Was Sufficient to Prove That H.S.' Conduct Expressed Lack of Consent

We agree with the Court of Appeals that a reasonable jury could find, on this record, that H.S. expressed a lack of consent through her conduct. Evidence of her conduct prior to the penetration included going into her private bathroom where no males were allowed, shutting the door, lying on the floor next to the toilet, and falling asleep face down while fully clothed. During the entire time Mielak was in the bathroom, including when he pulled down H.S.' pants and digitally penetrated her, Mielak could see that H.S.' conduct did not change—she remained face down on the floor, immobile, with her eyes shut.

Mielak was aware of this series of acts and omissions, and his own actions in response provide strong circumstantial evidence that he understood H.S.' conduct to be expressing a lack of consent to sexual activity. Mielak waited until H.S. was alone in the bathroom, then entered without speaking while H.S. appeared to be either asleep or unconscious, and he digitally penetrated her while she lay perfectly still on the bathroom floor. Mielak's tearful and apologetic reaction when he learned that H.S. was aware of the penetration shows that he understood H.S.' conduct to be expressing a lack of consent to sexual activity.

Although for slightly different reasons, we agree with the Court of Appeals that on this record, a reasonable jury could find that H.S. expressed a lack of consent through her conduct, and that the State proved the theory that the sexual penetration was "without the consent of the victim" under § 28-319(1)(a). Mielak's arguments to the contrary find no support in the applicable law or the record.

(b) Evidence That Mielak Knew or Should Have
Known H.S. Was "[M]entally or [P]hysically
[I]ncapable of [R]esisting" Under § 28-319(1)(b)

Before the Court of Appeals, Mielak argued the evidence was insufficient, as a matter of law, to prove the State's alternative theory that H.S. was "mentally or physically incapable of resisting or appraising the nature" of his conduct under § 28-319(1)(b). Mielak acknowledged that he knew H.S. had consumed a significant amount of alcohol in a short time and that she was intoxicated to the point of being ill. But he argued her testimony at trial showed that she was aware of the penetration as it was occurring, that she was able to tell her sister about the penetration shortly after it occurred, and that she was able to recall and testify about the penetration at trial. According to Mielak, this conclusively showed that despite her intoxication, H.S. was mentally and physically capable of resisting the sexual penetration, yet "[f]or whatever reason, H.S. chose not to respond to the contact."[40]

The Court of Appeals rejected this argument, reasoning that the evidence allowed the jury to "conclude that H.S. was so intoxicated and ill as to be incapable of resisting or appraising the nature of Mielak's actions but still able to react afterward and recall the assault."[41]

On further review, Mielak argues this was error. He contends that on this record, no reasonable jury could find that H.S.' intoxication rendered her mentally or physically incapable of resisting, because her testimony showed she had the "ability to clearly recall and accurately communicate the details of the incident"[42] and thus "demonstrated her complete unimpaired capacity to respond"[43] to the sexual contact. We also understand Mielak to argue that only intoxication "to the

---

[40] Brief for appellant at 12.

[41] *Mielak, supra* note 1, 33 Neb. App. at 323, 16 N.W.3d at 155.

[42] Brief for appellant in support of petition for further review at 5.

[43] *Id.*

point of utter insensibility or stupefaction"[44] can support a finding of incapacitation under § 28-319(1)(b).

We rejected similar arguments in *State v. Npimnee*.[45] In that case, the victim testified that she consumed four or more alcoholic drinks over several hours, and she estimated her level of intoxication at an 8 or 9 on a 10-point scale. At approximately 2 a.m., she was sitting on a public bench waiting for a ride when the defendant approached her. Sometime later, she realized she was in the defendant's vehicle, although she could not recall how she got there. The victim recalled the defendant's opening the passenger door of his vehicle, unbuttoning her shorts, and performing oral sex on her as she told him, "'[N]o, this isn't happening.'"[46] When a police vehicle stopped behind the defendant's vehicle, the victim went to the officer and reported the assault.

At trial, the jury in *Npimnee* was instructed under the alternative theories that the defendant subjected the victim to sexual penetration either without her consent under § 28-319(1)(a) or when he knew or should have known that the victim was mentally or physically incapable of resisting under § 28-319(1)(b). The defendant objected to this alternative instruction, arguing the jury should not have been given "contradictory theories of the case"[47] because the victim could not both express a lack of consent and simultaneously be incapable of consent. We rejected that argument, noting we had long held that if there was evidence to support both theories, both were properly submitted to the jury.[48] We explained in *Npimnee*:

> [O]ur case law does not set forth some mythical level of intoxication after which a person is considered to

---

[44] *Id.* at 7.

[45] *Npimnee, supra* note 3.

[46] *Id*. at 3, 2 N.W.3d at 624.

[47] *Id*. at 7, 2 N.W.3d at 626.

[48] *Npimnee, supra* note 3, citing *McCurdy, supra* note 11.

have a "significant abnormality" or to be "severe[ly] intoxicat[ed]" sufficient to render the person incapable of resisting for purposes of [§ 28-319(1)(b)]. A victim can be . . . incapable of resisting or appraising the nature of his or her conduct without suffering from an "abnormality" or "substantial mental or physical impairment," like "severe intoxication."

Section 28-319(1)(b) requires an "individualized inquiry" into the victim's capacity, and the evidence in this case was sufficient for a jury to find that [the victim] was so intoxicated as to be incapable of resisting [the defendant's] actions.[49]

*Npimnee* makes it abundantly clear that an intoxicated victim can be mentally or physically incapable of resisting or appraising the nature of the conduct under § 28-319(1)(b), even though the victim was aware of the contact and able to testify about it later. Here, it was a fact question for the jury whether Mielak knew or should have known that H.S.' level of intoxication rendered her mentally or physically incapable of resisting, and we reject Mielak's suggestion that only intoxication "to the point of utter insensibility or stupefaction"[50] can support a finding of incapacitation under § 28-319(1)(b).

Here, the evidence showed Mielak knew that H.S. was intoxicated to the point of vomiting; knew that she was lying motionless on the floor by the toilet, face down, with her eyes closed; and knew that she did not move or react when he pulled down her pants and digitally penetrated her. We agree with the Court of Appeals that a reasonable jury could conclude from this evidence that when Mielak digitally penetrated H.S., he knew or should have known she was mentally or physically incapable of resisting or appraising the nature

---

[49] *Npimnee, supra* note 3, 316 Neb. at 9-10, 2 N.W.3d at 627-28.

[50] Brief for appellant in support of petition for further review at 7.

of his conduct under § 28-319(1)(b). Mielak's second assignment of error on further review lacks merit.

## 2. Jury Instruction

In his final assignment of error on further review, Mielak argues the Court of Appeals erroneously "sidestepped"[51] his challenge to the trial court's refusal to give his proposed jury instruction defining the statutory phrase "should have known." We disagree.

[9,10] To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.[52] It is incumbent upon an appellant to supply a record which supports his or her appeal, and when a proposed instruction is not included in the record on appeal, the appellate court has "'no instruction to review in order to determine whether it ought to have been given.'"[53]

The Court of Appeals declined to consider Mielak's challenge for two reasons. First, the proposed instruction was not included in the appellate record. Alternatively, to the extent Mielak was more generally challenging the inclusion of the statutory phrase "knew or should have known" in the elements instruction, the Court of Appeals concluded the language came directly from § 28-319(1)(b) and "[i]n giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute."[54]

---

[51] *Id*. at 8.

[52] *State v. White, ante* p. 1, 32 N.W.3d 256 (2026).

[53] See *State v. Custer*, 292 Neb. 88, 100-01, 871 N.W.2d 243, 255 (2015), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

[54] *Mielak, supra* note 1, 33 Neb. App. at 328, 16 N.W.3d at 158, citing *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

The Court of Appeals was correct in both respects, and Mielak's third assignment of error warrants no additional discussion on further review.

## V. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

MILLER-LERMAN, J., not participating in the decision.

FUNKE, C.J., not participating.